Robert L. GREEN, Sr., Plaintiff,

v.

**ILLINOIS DEPARTMENT OF
TRANSPORTATION, et al.,
Defendants.**

No. 84 C 7081.

United States District Court,
N.D. Illinois, E.D.

March 5, 1985.

Freddrenna M. Lyle, Chicago, Ill., for plaintiff.

Daniel H. Brennan and Gladys Stevens, Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Robert Green ("Green") has sued defendants, Illinois Department of Transportation ("IDOT") and Joseph Kostur and Suzanne Czajkowski, two IDOT administrators, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and the Fifth, Thirteenth and Fourteenth Amendments of the Constitution. Although written in one count, the complaint makes out two categories of claims—one for discrimination in employment on the basis of race and the other for retaliation against Green for filing discrimination charges.

Defendants have moved to dismiss the complaint.[1] The thrust of defendants' argument is that plaintiff's claims are barred by the doctrine of res judicata. They also argue that the claim under section 1981 and the constitutional claims under 42 U.S.C. §§ 1983 and 1985 must be dismissed because Title VII is the exclusive remedy for this discrimination action. For the reasons stated below, defendants' motion is granted in part and denied in part.

---

1. For the purposes of a motion to dismiss, the Court usually assumes the truth of the complaint's allegations and does not look beyond its four corners. However, because the parties have submitted other documents with their memoranda, we shall consider IDOT's motion under Rule 56. See Fed.R.Civ.P. 12(b). In any event, the material facts listed below are undisputed.

## I.

Green, a 64 year old black man, worked for IDOT for 14 years until July 1983, when he was fired. Defendant Joseph Kostur ("Kostur") is an IDOT Safety and Claims Manager, and Suzanne Czajkowski ("Czajkowski") is a Senior Claims Examiner. Kostur and Czajkowski were Green's supervisors at his most recent job with IDOT.

IDOT hired Green in March 1969 as a Right of Way Agent. In 1979, Green filed with the Equal Employment Opportunity Commission ("EEOC") a discrimination charge against IDOT, accusing it of failing to promote him because of race. Under a settlement agreement Green was promoted in 1979 to the position of investigator. In January 1980, plaintiff again filed a discrimination charge with the EEOC. Following this charge, IDOT agreed it would give plaintiff primary consideration for the next available position for which he was qualified. However, IDOT never promoted him. In July 1983 IDOT fired Green, who remains unemployed.

In December 1981, Green sued IDOT alleging, among other things, violations of Title VII. In particular, Green alleged that following his complaint to the EEOC in January 1980, IDOT in retaliation harassed him in various ways. He alleged that supervisors monitored his work and disciplined him more extensively than that of his white co-workers. For example, between September 1979 and March 1980, they allegedly reviewed his work in detailed memoranda, while not so reviewing other employees. The complaint also alleged that he had applied for a promotion in late 1980, and that IDOT denied him that promotion because of his race. The complaint alleges that both the failure to promote and the retaliatory acts violated Title VII.[2]

By agreement of the parties, the 1981 suit ("Green I") was transferred to a Magistrate. On December 14, 1983, the Magistrate dismissed the suit for want of prosecution when Green's counsel failed to appear at a status hearing. This was the third "DWP" in the case, as this Court had twice before dismissed and then reinstated the case. Green moved to vacate the Magistrate's order of dismissal. The Magistrate denied the motion on March 29, 1984, and Green never appealed.

In July 1983, while *Green I* was still pending, Green filed another EEOC complaint. This charge alleged that his recent discharge was both retaliatory and based on race. In May 1984, the EEOC issued a "Right to Sue" letter, and Green filed this suit ("*Green II*") on time in August 1984. The complaint in *Green II* recites the same history that was alleged in *Green I*. The complaint adds that the discrimination in promotion occurred again in September 1982, and that the regular harassment and excess scrutiny continued until Green was fired. The complaint also alleges that Green's firing was an additional and final act of retaliation and discrimination. The suit seeks injunctive and monetary relief under Title VII, as well as under 42 U.S.C. §§ 1981, 1983 and 1985. Arguing that this suit is a reincarnation of *Green I*, IDOT has moved to dismiss.

## II.

The doctrine of *res judicata*, or "claim preclusion," serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Under this doctrine, resolution of a previous case bars litigation of a later claim if the following elements are present: (1) the final judgment in the previous case was on the merits; (2) parties or their privies in the two suits are the same; and (3) the causes of action in both suits are the same. *Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir.1983), *cert. denied*, —— U.S. ——, 105

2. The 1981 complaint also alleged violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*, 42 U.S.C. § 1981 and constitutional violations via 42 U.S.C. § 1983.

S.Ct. 116, 83 L.Ed.2d 59 (1984); *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982).

■ It is clear that the first and second elements are met here. The dismissal of *Green I* for want of prosecution under Fed.R.Civ.P. 41(b) was a "final judgment on the merits" for *res judicata* purposes.[3] *See, e.g., Kotakis v. Elgin, Joliet & Eastern Railway Co.*, 520 F.2d 570, 576–77 (7th Cir.1975), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4440 (1981) at 362–363. Likewise, the parties of *Green I* and *Green II* are identical under the *res judicata* doctrine. While *Green II* joins two IDOT officials as defendants, a government agency and its employees are in privity for *res judicata* purposes. *See, e.g., Mandarino v. Pollard*, 718 F.2d at 850.

■ The more complex issue in this case is whether *Green I* and *Green II* set forth the same cause of action. The Seventh Circuit has used the following test to determine whether two suits state identical causes of action:

> [A] cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned. Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted, and *res judicata* bars the latter section.

*Lee v. City of Peoria*, 685 F.2d at 200, *quoting Morris v. Union Oil of California*, 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (1981). As a corollary to this rule, *res judicata* operates to bar not only those matters which were actually raised in the prior action but any matter which might have been raised. *Harper Plastics, Inc. v. Amoco Chemical Corp.*, 657 F.2d 939, 945 (7th Cir.1981). In other words, an unsuccessful plaintiff may not sneak around the doctrine of *res judicata* by cloaking a cause of action in a theory of recovery untried in the previous suit. *Lambert v. Conrad*, 536 F.2d 1183, 1185 (7th Cir.1976). Under these principles it is clear that much of the present complaint is barred. *Res judicata* bars relief here to the extent it is based upon acts which occurred before the first complaint was filed, as those acts are part of the same "core of facts" that Green alleged in his first suit. Thus, *res judicata* bars allegations concerning the failure to promote Green in 1978, *see* complaint ¶ 16(a), and the various acts of harassment which occurred before *Green I* was filed.

■ However, many of the facts alleged in the pending suit, while of the same nature as those alleged in *Green I*, occurred after the filing but before the dismissal of that case. For example, IDOT allegedly discharged Green in July 1983, continued to harass him until that date and denied him promotion in September 1982. Because these alleged acts occurred after the first suit was filed, the principles of *res judicata* may dictate a different result for these acts. A continuing course of conduct by a defendant, even if related to conduct complained of in an earlier suit, generally creates a separate cause of action. *See, e.g., Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328–29, 75 S.Ct. 865, 868–69, 99 L.Ed. 1122 (1955) (continuing antitrust violations). Thus, the doctrine of *res judicata* does not stop a plaintiff from bringing a retaliation claim based on acts

---

**3.** Rule 41(b) states in relevant part:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.

 ＊ ＊ ＊ ＊ ＊ ＊

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

occurring after judgment in the first suit. *See Kilgoar v. Colbert County Bd. of Educ.,* 578 F.2d 1033, 1035 (5th Cir.1978); *Dawkins v. Nabisco, Inc.,* 549 F.2d 396, 397 (5th Cir.1977), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *Kavanaugh v. Sperry Univac,* 511 F.Supp. 705, 706 (N.D.Ill.1981) (retaliatory refusal to rehire employee who had lost previous employment discrimination claim creates separate cause of action), *aff'd,* 729 F.2d 1464 (7th Cir.1984), *cert. denied,* —— U.S. ——, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 4409 (1981) at 81; *see also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 669 F.2d 490, 494 (7th Cir. 1982) (continuing violations of antitrust laws create separate causes of action), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); *International Harvester Co. v. Occupational Safety and Health Review Comm'n.,* 628 F.2d 982, 985–86 (7th Cir.1980) (continuing violation of administrative regulation). In all of these cases, however, the conduct complained of in the second suit occurred *after* judgment had been entered in the first. The precise question here, then, is whether any of the conduct in this case which occurred after the filing of the first complaint, but before judgment, is barred. There is no clear rule prescribing how to deal with this issue:

> Most cases assume that an action need include only the portions of the claim due at the time of commencing that action. The Court of Claims, however, appears to follow a rule that requires a plaintiff to amend to add later maturing claims. The difficulty presented by this alternative lies in identifying a suitable alternative stopping point. Substantial disrup-

tion could result from forced amendment at any time after significant discovery has been accomplished, and it is hard to justify any test relating to the progress of discovery or other pretrial events so clear that plaintiffs could afford to apply it without seeking explicit judicial guidance. Perhaps the best rule would be that claims for damages need include only matters arising out of injuries inflicted before the commencement of suit, while claims for declaratory or injunctive relief that intrinsically deal with conduct persisting through trial or into the future should embrace all matters arising prior to the close of trial or even judgment.

18 Wright, Miller & Cooper, § 4409 at 76–77. We agree with this Treatise that a general rule requiring forced amendment would be difficult to apply. This is especially true in Title VII suits, where an employee generally cannot file a later maturing claim without first filing a charge with the EEOC.

■■■■ Applying these principles to this case, we find that *res judicata* does not bar Green's claims based on the discharge in July 1983 and the denial of promotion in September 1982. The discharge, whether based on retaliation, race or both, created a new separate claim for relief under Title VII. *See* 42 U.S.C. § 2000e–3(a). Green should not have been required to seek leave to amend his first suit, then two years old, to add this new claim. But even if *res judicata* implied a general duty to amend, Green probably could not have amended his earlier suit to allege this claim, because he had not yet completed the administrative process.[4] As such, he cannot now be barred from pressing this claim. *See* Restatement (Second) of Judgments, § 26(1)(c) (1982) (claim preclusion does not apply

---

4. Because the alleged retaliation constituted an independent violation of Title VII, Green had to file EEOC charges before filing suit. 42 U.S.C. § 2000e–5(e). *United Airlines v. Evans,* 431 U.S. 553, 554–55, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1977). Green had done so by filing a charge soon after being fired. While a few courts have exempted certain retaliation claims from these filing requirements, *see Pouncy v. Prudential Ins. Co. of America,* 499 F.Supp. 427, 435 (S.D.

Tex.1980), *aff'd,* 668 F.2d 795, 797 n. 4 (5th Cir.1982); *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063, 1075 (D.Me.1977), it is far from certain that Green would have been allowed to amend his 1981 complaint to add the reprisal claim without first filing with the EEOC. For this reason, Green should not be punished for following the normal Title VII filing procedures.

where limitations on first court's jurisdiction prevented litigation of theory or availability of remedy). Similarly, the claim alleging the September 1982 denial of promotion is not barred. We think that this denial of promotion, being a discrete and obvious act, constituted a separate, rather than continuing, violation of Title VII, as well as 42 U.S.C. §§ 1981, 1983 and 1985. *See Berry v. Bd. of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983); *Zewde v. Elgin Community College,* 601 F.Supp. 1237, 1242–1243 (N.D.Ill.1984) (Aspen, J.). Although Green could have sought leave to amend *Green I* to allege this claim which arose after that suit had been filed, we decline to read the doctrine of *res judicata* to require that Green should have amended his first complaint to add this claim. As noted above, it is difficult, if not impossible, for a court to draw a line as to when in a previous lawsuit a plaintiff should have tried to add a later-maturing claim. A rule requiring amendment would be difficult for courts and plaintiffs to apply and could disrupt or needlessly complicate the first suit. Thus, we follow the approach suggested by Professors Wright, Miller & Cooper and draw the line at the date of filing of the first suit. Accordingly, the discrete claim alleging unlawful denial of promotion in 1982 is not barred by *res judicata*.

Green alleges that this failure to promote him violates Title VII, as well as 42 U.S.C. §§ 1981, 1983 and 1985. We think it proper to digress briefly from our *res judicata* analysis to point out that the Court lacks jurisdiction over this claim to the extent it is grounded in Title VII. Because the denial of promotion amounted to a separate violation of Title VII, Green should have filed a timely EEOC charge concerning the alleged wrong. So far as we know, he never filed such a charge. While his July 8, 1983 charge was perhaps timely for acts occurring the previous September,[5] that charge does not mention the failure to promote, and its content is not "like or reasonably related to" the denial of promotion.[6] Thus, jurisdictional grounds independent of *res judicata* bar a Title VII claim based on the failure to promote. As noted above, however, other avenues of relief are still open to Green.

 To wrap up the *res judicata* analysis, we must deal with Green's claim concerning the alleged harassment. Green alleges that the harassment was regular and continual beginning at least as early as 1980. The conduct was challenged in *Green I* and continued after that suit was filed until Green was fired. In contrast to the discharge or denial of promotion, this alleged daily oppression did continually violate Title VII. Given the continuing nature of this harassment, Green's prayer for injunctive relief would have stopped this harassment from continuing beyond the date of judgment. We think that the principles discussed above bar Green's current claim for relief based on the harassment. Green is seeking a second chance to litigate the same harassment he complained of in *Green I,* even though he had a full and fair chance to obtain complete relief in *Green I.* This is precisely what the doctrine of *res judicata* is meant to prevent. The bedrock principle of preclusion doctrine is that a plaintiff be limited to *one* full and fair opportunity to litigate his claim. *See Allen v. McCurry,* 449 U.S. 90, 94–96, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). Where a claim for injunctive relief deals with continuing conduct which by nature persists through trial, the plaintiff can usually litigate the claim fully without having to

---

**5.** Green had at least 240, and perhaps as much as 300, days in which to file a charge. *See Zewde,* 601 F.Supp. at 1241–1242; *see also Anderson v. Illinois Tool Works,* 753 F.2d 622 (7th Cir.1985). The July filing was in the upper part of this range and might have been late as far as the September 1982 acts. However, we have assumed for this opinion that the filing was timely.

**6.** *See Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (facts not in EEOC charge may be alleged in complaint if "like or reasonably related to" allegations in charge), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976).

amend to seek complete redress.[7] Thus, we agree with the above suggestion of Professors Wright, Miller and Cooper that it may be fair to preclude later claims for injunctive relief which are based on a continual course of conduct which occurred before judgment had been entered in a previous suit. Green's claim based on the harassment is just such a claim and is barred.

■ Our distinction above between the continuing harassment on the one hand and the discharge and denied promotion on the other derives some indirect support from the recent case of *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 745 F.2d 441 (7th Cir.1984). The Court there held that *res judicata* did not bar a later claim for damages based upon conduct which occurred before verdict in a previous suit, because the damages had been speculative when the first trial took place. *Id.* at 447–451. However, the Court held that the previous case's rulings on injunctive relief were *res judicata* as to continuing post-verdict violations, because the district court had given the parties an opportunity to argue whether injunctive relief was proper. *Id.* at 451–52. While the Court did not address the issue directly involved here—whether *res judicata* imposes, in effect, a duty to amend the complaint to add claims accruing while the first suit is pending—the Court's holdings do lend some support for the rule proposed by Professors Wright, Miller and Cooper. Where a continuing course of conduct is amenable to injunctive relief in the first suit, *res judicata* should normally bar later claims for injunctive relief based upon conduct which occurred both before or during the first lawsuit. However, claims seeking damages may require a different result, either because as in *Ohio-Sealy*, damages were speculative at the time of the first trial, or because, as suggested above, forced amendment would cause disruption in the first suit.

In sum, our rulings above pare this suit as follows. The alleged discriminatory discharge of July 1983 is not barred. The alleged denial of promotion of September 1982 is likewise not barred by *res judicata*, but the Title VII component of this claim is jurisdictionally barred. All of the other alleged acts—the earlier denials of promotion and the harassment—are barred.

### III.

■ IDOT raises a few more issues, which we can dispose of quickly. Citing *Torres v. Wisconsin Dept. of Health & Social Services*, 592 F.Supp. 922 (E.D.Wis. 1984), IDOT argues that Title VII provides Green an exclusive avenue of relief, and that his claims for relief under 42 U.S.C. §§ 1981, 1983 and 1985 must be stricken. We disagree. We recently decided this issue, disagreeing with *Torres*. *See Zewde*, 601 F.Supp. at 1244–1248. In *Zewde*, we held that where a set of facts gives rise to a Title VII claim *and* to a claim based on independent constitutional grounds, a plaintiff may allege alternative claims under Title VII and § 1983. 601 F.Supp. at 1245. A recent Sixth Circuit case supports this holding. *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199 (6th Cir.1984); *accord Storey v. Bd. of Regents*, 660 F.Supp. 838 (D.Wis.1985) (Doyle, J.). The Court in *Day* held that Title VII is exclusive where the § 1983 violation is premised only on a violation of Title VII. However,

> [w]here an employee establishes employer conduct which violates both Title VII and rights derived from another source— the Constitution or a federal statute— which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII.

749 F.2d at 1205. In accordance with *Day* and *Zewde*, we hold as follows. Inasmuch as Green alleges that his discharge violated

---

7. We also think that Green could have obtained full monetary relief for the continued harass-

ment without having to amend his complaint.

the federal Constitution as well as Title VII, his § 1983 claim is valid; the § 1983 claim is stricken to the extent it realleges a violation of Title VII.[8] The same holds true for the alleged violations of §§ 1985 and 1981. Like § 1983, § 1985 creates no substantive rights; in this context the same rule should apply to both. *Day,* 749 F.2d at 1204. Similarly, the § 1981 claim survives to the extent it alleges infringement of rights which existed before the enactment of Title VII. *Id.*

The individual defendants argue that they must be dismissed from the Title VII claim, since they were not named as respondents in the EEOC charge. We agree. *See Zewde,* 601 F.Supp. at 1243. This dismissal, of course, does not extend to the concurrent claims for relief under §§ 1981, 1983 or 1985.

## IV.

The complaint is dismissed to the extent it seeks relief for acts occurring before *Green I* was filed and for the alleged acts of harassment. The Title VII claim based on the September 1982 denial of promotion is dismissed. The individual defendants are dismissed from the Title VII claims. In all other respects, the motion to dismiss is denied.[9] It is so ordered.

---

8. Because § 1983 authorizes relief for state violations of the "constitution *and laws*" of the United States, a plaintiff could, in theory, base a § 1983 claim solely on a violation of Title VII. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (§ 1983 generally authorizes suits to redress violations by state officials of rights created by federal statutes); *Huebschen v. Dept. of Health & Social Services,* 547 F.Supp. 1168, 1173–75 (W.D.Wis.1982) (plaintiff may allege a Title VII claim via § 1983), *rev'd on other grounds,* 716 F.2d 1167 (7th Cir.1983). *Day* reaches a contrary result. In *Zewde,* we stated in dictum that a plaintiff probably could not reassert his Title VII substantive rights via the § 1983 conduit. 601 F.Supp. at 1245. In this case, we affirm that dictum and hold that Green's § 1983 claim is dismissed to the limited extent it reasserts rights created by Title VII.

9. IDOT's equitable estoppel arguments lack merit.