**In re GAIN ELECTRONICS CORPORATION.**

**Bankruptcy No. 89–00002.**

United States Bankruptcy Court, D. New Jersey.

March 27, 1992.

Peter R. Sarasohn, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for First Fidelity Bank, N.A., North Jersey.

Warren J. Martin, Jr., Riker, Danzig, Scherer & Hyland, Morristown, N.J., for MDFC Equipment Leasing Corp.

## OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is a preliminary ruling on the motion filed December 13, 1989 by First Fidelity Bank, N.A., North Jersey ("FFB") for an order compelling MDFC Equipment Leasing Corporation ("MDFC") to reimburse FFB under § 506(c) of title 11, United States Code ("Bankruptcy Code" or "Code") for costs of preserving MDFC's collateral.

It is unnecessary to repeat here the entire procedural history of the litigation between FFB and MDFC, which is described adequately in the moving and opposing papers. At the time of the events in question, FFB had become the owner of real property at 22 Chubb Way, Branchburg, New Jersey. Gain Electronics Corp. ("Gain"), the debtor in this case, had been the tenant under a lease with the prior owner, Pivot Realty Company, Limited Partnership. Gain filed a petition on January 3, 1989 for liquidation under chapter 7 of the Bankruptcy Code, and Jonathan Kohn, Esq. was appointed as trustee. There was equipment on the premises in which MDFC had a security interest, as collateral for its claim against Gain. FFB filed a motion on May 3, 1989 to compel the trustee to pay rent as an administrative expense of the bankruptcy case under Code §§ 365(d)(3) and 503(b), and to compel MDFC to pay so-called use and occupancy charges under Code § 506(c) for storage of MDFC's equipment. The court entered an order granting that motion on August 21, 1989. That order is on appeal.

The order of August 21, 1989 essentially required MDFC to pay FFB rent pursuant to Code § 506(c) in the amount of $258,736.56 for the period from May 4, 1989 through July 18, 1989, when most of MDFC's equipment was removed. The August 21, 1989 order also required MDFC to pay storage charges of $7,500 per month from July 19, 1989 until the remaining equipment was removed on or about September 1, 1989. The basis of that ruling was the court's finding that MDFC had realized a benefit from its occupancy of FFB's property of approximately $1.55 million. This figure was calculated as the difference between the appraised value and the sale price of the bulk of the equipment which MDFC sold to Boeing.

On this motion, FFB seeks reimbursement from MDFC under Code § 506(c) for utility charges, insurance, security, property taxes and landscaping during the period in question. FFB characterizes these charges as maintenance expenses. MDFC opposes this motion. Its defenses include

an argument that this motion is barred by the doctrine of *res judicata* because the maintenance expenses were not sought on the prior motion. FFB replies that when the prior motion for rent was filed on May 3, 1989, the maintenance expenses had not yet been incurred (except for part of the property taxes). In addition, MDFC's sale of equipment to Boeing had not yet been consummated, nor had the trustee rejected the real property lease. The sale and lease rejection had taken place by the final hearing on the prior motion on July 28, 1989, and most of the maintenance expenses had been incurred by then. However, FFB alleges that it was not yet clear how much of the maintenance expenses had been paid by the trustee. FFB notes that it informed the court and MDFC on several occasions, including the hearing on July 28, 1989, that there were other expenses which it would be seeking and which were not the subject of that motion. FFB argues that it could not have sought the maintenance expenses on its prior motion, and that it had no obligation to do so.

■ The party asserting the affirmative defense of *res judicata* has the burden of showing that it applies. *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984). Application of the doctrine requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action. *Id.*

> Rather than resting on the specific legal theory invoked, *res judicata* is generally thought to turn on the essential similarity of the underlying events giving rise to the various legal claims, although a clear definition of that requisite similarity has proven elusive.

*Davis v. United States Steel Supply, etc.*, 688 F.2d 166, 171 (3d Cir.1982).

■ Applying these principles to this case, the court concludes that the order of August 21, 1989 was a final judgment on the merits. An argument could be made that because paragraphs four and six of that order left certain incidental matters open, the order was not a final judgment under Fed.R.Bankr.P. 9014 and 7054(b). However, those items were subsequently resolved, and the court concludes that the order of August 21, 1989, as subsequently supplemented to resolve those open items was a final judgment for present purposes.

The parties to the prior motion were the same, so the second element of the *Athlone* test has been met.

■ The last question is whether this motion is based on "the same causes of action" as the prior motion. The commonality between the motions is that they both assert claims by FFB against MDFC under Code § 506(c) for reasonable, necessary costs and expenses of preserving MDFC's collateral for its benefit. FFB argues that the nature of the claims is different, i.e., rent in the prior motion and maintenance expenses in this motion. However, under *Davis* the question is not whether the claims are the same; it is whether the underlying events giving rise to the claims have the "essential similarity" required to apply *res judicata.*

As previously noted, the maintenance expenses had not all been incurred when the prior motion was filed on May 3, 1989. In addition, the extent of any benefit to MDFC had not yet been determined, because the equipment had not yet been sold. Further, as of the July 28, 1989 hearing on the prior motion, it was unclear how much of the expenses in question had been paid by the trustee. Lastly, counsel for FFB repeatedly asserted an intention to file a separate motion to recover maintenance expenses.

■ It is arguable that these expenses could have been claimed by amendment to the prior motion. The court does not accept FFB's argument that motion procedure does not permit modification of a motion to add claims accruing after the filing of a motion and before its resolution. However, the ultimate question here is not whether such amendments are permitted; it is whether such an amendment was *required* in this case. It has been held that where monetary claims arise after the filing of a complaint but before judgment,

amendment of the complaint to include claims arising after filing is not required. *Green v. Illinois Dept. of Transp.*, 609 F.Supp. 1021 (D.C.Ill.1985) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4409, at 76–77 (1981)). This court agrees with those authorities as to the facts of this case. While amendment of the prior motion would have been preferable from the standpoint of judicial economy, it is doubtful that such amendment could have included all maintenance expenses because the amounts were not known to FFB yet. The prior motion might have been adjourned until all of the maintenance expenses were known; however, FFB proposed instead to deal with the maintenance expenses in a separate motion, and neither MDFC nor the court objected. Under all of these circumstances, the court concludes that MDFC has not met its burden of showing that this motion is based on the same cause of action as the prior motion for purposes of the doctrine of *res judicata*. That doctrine does not bar this motion.

The court's ruling on that affirmative defense clears the way for scheduling of an evidentiary hearing on the merits of this motion. The parties shall confer and inform the court as to whether any discovery will be required before the hearing, and as to the estimated length of time required for the hearing. You should then request a phone conference to schedule further proceedings.

Mr. Sarasohn is to submit an interlocutory order reflecting the court's ruling on the *res judicata* defense under the five-day rule.