OTTMAR BECKER *et al.*, Plaintiffs-Appellants, v. WALLACE COLD *et al.*, Defendants-Appellees.

Third District   No. 3—92—0947

Opinion filed August 4, 1993.

858

Lowe & Steinmetz, Ltd., of Aurora (Ralph E. Lowe, of counsel), for appellants.

Donald D. Knuckey, of Henry, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, Ottmar Becker, Raymond Mason and the Lake Thunderbird Association, brought a class action against the 1,717 owners of property in a subdivision known generally as the "Lake Thunderbird Development." The plaintiffs sought a judgment declaring certain provisions of the "Declaration of Restrictive Covenants" (the Covenants), imposed on the properties of the development, void and unenforceable. The amended complaint alleged the named defendants, Wallace Cold and Elmo Fowler, would fairly and adequately protect the interests of the class. The circuit court of Putnam County granted the defendants' motion to dismiss and ordered the litigation terminated pursuant to section 2—615(d) of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—615(d)). The plaintiffs appeal. We affirm.

According to the amended complaint, the Lake Thunderbird Development is located partially in both Bureau and Putnam Counties. Development of the subdivision commenced in the late 1960's. The lots in the subdivision are encumbered by the Covenants, which, *inter alia*, provide for the establishment of a property owners association (referred to hereinafter as the Association). Pursuant to the Covenants, the developer, American Central Corporation, at one point transferred to the Association title to various recreational facilities located within the subdivision, including a clubhouse and Lake Thunderbird. The developer also transferred to the Association the title to roads and a public water supply and distribution system.

The Covenants also provided for the assessment of a $26 annual maintenance fee against each lot in the subdivision. This fee was to be used for the upkeep of the common areas. The Covenants provided for adjustments to the annual maintenance fee, as well as other means to raise needed funds. Article V, section 4, of the Covenants provided in pertinent part: "After the establishment of the Association and the conveyance thereto of the Common Properties by the Developer, the Association may change the annual Maintenance Fee on lots in The Properties subject to the approval of the Owners of not less than 2/3 of the lots affects [sic] by any such change. Any such change must, however, bear a reasonable relationship to changes in costs or the scope of benefits to Owners [sic] to be provided thereby and by [sic] such change shall be for the exclusive benefit of such Owners. After such date the Association may also, with the consent of the Owners of 2/3 of the lots in the Community levy special assessments for capital improvements or other non-recurring expenditures for the maintenance or improvement of the Common Properties payable within one year from the date of such levy."

In count I of their amended complaint, the plaintiffs alleged in pertinent part: "Since the recording of said covenants there have been material changes in circumstances affecting the properties that plaintiff Association is obliged to maintain, in that, among other things, the annual cost of maintaining said properties, on a per lot basis, exceeds one hundred and fifty dollars, whereas the annual assessment provided for in the covenants remains at twenty six dollars." Count I alleged the procedure for increasing the annual assessment was unreasonable and that enforcement would be contrary to public policy. Count I requested the circuit court declare article V, section 4, void and unenforceable, and use its equitable powers to grant any further necessary relief.

In count II, the plaintiffs alleged the transfer of the common areas from the developer to the Association created a trust in which the Association, acting as a trustee, held and maintained the common areas for the benefit of the lot owners. The plaintiffs alleged the method provided for in the Covenants for adjusting the annual assessment was "unworkable on its face." The plaintiffs further asserted, "[T]he Developer-Settlor could not have anticipated nor have known of the inflationary forces in play since creation of the trust; and continued compliance with the aforesaid lot assessment limitations will defeat or substantially impair the continued accomplishment of the purposes of the trust." The plaintiffs requested that the circuit court find that a trust existed, and that the "Association-Trustee" was un-

reasonably impaired in carrying out its duties by the requirements found in article V, section 4, of the Covenants. The plaintiffs asked the court to find the provision no longer binding on the Association. The plaintiffs wanted the court to devise a workable alternative method for raising funds.

Following a hearing, the circuit court granted the defendants' motion to dismiss finding the plaintiffs' amended complaint failed to state a cause of action. The court subsequently denied the plaintiffs' motion for rehearing.

On appeal, the plaintiffs assert a number of arguments to support their contention that the circuit court erred in granting the motion to dismiss. Because we agree the complaint fails to state a cause of action for which relief could be granted, we need not address specifically each one of the plaintiffs' arguments.

However, we do address one preliminary argument, *i.e.*, that the circuit court erred in granting the defendants' motion because the defendants failed to designate under which provision of the Code the motion was brought. Meticulous practice dictates that a lawyer specifically designate whether his motion to dismiss is brought pursuant to section 2—615 of the Code rather than section 2—619. (See *Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 399 N.E.2d 656.) However, while the failure to make the proper designation should not be countenanced, it is not always fatal to the movant prevailing on the motion. (See *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 582 N.E.2d 108.) Generally, reversal is required in such cases where the movant's failure to designate results in prejudice to the nonmovant. *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360.

■ In the instant case, the plaintiffs do not allege how they were prejudiced by the defendants' failure to specifically designate the provision of the Code under which the motion was brought. The record shows that at the time of the hearing on the motion to dismiss, the plaintiffs recognized the defendants' motion was brought pursuant to section 2—615, and so argued accordingly. The circuit court treated the motion as a section 2—615 motion and, in granting the motion, terminated the litigation relying on the authority given in section 2—615(d). Under these circumstances, the plaintiffs have failed to show they suffered any prejudice of a nature sufficient to warrant a reversal in this case.

■ Looking to the plaintiffs' substantive arguments, we are mindful of the general rule that a trial court may grant a section 2—615 motion when a complaint does not contain allegations of fact suf-

ficient to state a cause of action. (*Singer v. Brookman* (1991), 217 Ill. App. 3d 870, 578 N.E.2d 1.) And without reaching the issue of whether a trust was created in this case, we find, on reviewing the amended complaint, that it does not allege sufficient facts to state a cause of action. While the complaint alleges the procedure for changing the annual maintenance fee is "unreasonable" and "unworkable," the plaintiffs allege no factual basis for these conclusional allegations. In short, the plaintiffs have failed to allege why the procedure is unreasonable and unworkable. In ruling on a motion to dismiss for failure to state a cause of action, a court must accept as true all well-pleaded facts; however, the court need not accept conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (*Hensler v. Busey Bank* (1992), 231 Ill. App. 3d 920, 596 N.E.2d 1269.) We note the plaintiffs did not, and do not, challenge the circuit court's termination of this litigation. They did not ask leave to amend their complaint.

In sum, we find the circuit court correctly determined that the plaintiffs' amended complaint failed to state a cause of action and thus granted the defendants' motion to dismiss.

Therefore, the judgment of the circuit court of Putnam County is affirmed.

Affirmed.

SLATER and BRESLIN, JJ., concur.